UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NADINE STUTH, | ) |
| | ) |
| Plaintiff, | ) Case No. 3:12-cv-1317 |
| | ) Judge Trauger |
| v. | ) |
| | ) |
| BRIXMOR WATSON GLEN, LLC, and | ) |
| HEARTHSTONE PROPERTY SERVICES, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Pending before the court is a Motion for Summary Judgment filed by defendant Hearthstone Property Services ("Hearthstone") (Docket No. 33), to which the plaintiff, Nadine Stuth, and defendant/cross-plaintiff Brixmor Watson Glen, LLC ("Brixmor"), have filed Responses in opposition (Docket Nos. 38 (plaintiff), 44 (Brixmor)), and defendant Hearthstone has filed Replies (Docket Nos. 39, 47). Also pending before the court is a Motion for Judgment as a Matter of Law filed by Hearthstone (Docket No. 40) as to a cross-claim filed by Brixmor, to which Brixmor has filed a Response in opposition (Docket No. 42). For the reasons discussed herein, Hearthstone's Motion for Summary Judgment and Motion for Judgment as a Matter of Law will be denied.

## MOTION FOR JUDGMENT AS A MATTER OF LAW

As an initial matter, on April 23, 2014, Hearthstone filed the pending Motion for Judgment as a Matter of Law as to Brixmor's cross-claim against it pursuant to Fed. R. Civ. P. 56 and Local Rule 7.1. Hearthstone moved for judgment on the ground that Hearthstone's Motion for Summary Judgment was unopposed by Brixmor. However, on April 24, 2014,

1

Brixmor opposed Hearthstone's Motion for Judgment, explaining that a calendar error had occurred and that, consequently, Brixmor had failed to file a timely response to Hearthstone's Motion for Summary Judgment. On April 25, 2014, the court granted Brixmor leave to respond to Hearthstone's Motion for Summary Judgment (Docket No. 43), and Brixmor filed a Response in opposition to Hearthstone's motion on the same day (Docket No. 44.) Accordingly, the court concludes that Hearthstone's Motion for Summary Judgment as to Brixmor's cross-claim is not unopposed and, therefore, Hearthstone's Motion for Judgment as a Matter of Law is without merit. Consequently, Hearthstone's Motion for Judgment will be denied.

## FACTS

**I.    Overview[1]**

The plaintiff, Nadine Stuth, fell in the parking lot of the Watson Glen Shopping Center (the "Premises") on December 31, 2011. Stuth, a 62-year-old college graduate, was at the Premises to visit a store, Once Upon a Child (the "Store"), with her pregnant daughter. Upon arrival at the Premises, Stuth and her daughter parked their vehicle and walked into the Store. Stuth carried her purse with her as she entered the store. Inside the store, Stuth purchased a bassinet. To carry the bassinet to their vehicle, Stuth's daughter picked up the top of the bassinet and Stuth picked up the bassinet's base and frame. The base and frame measured about 18 inches tall and 3 feet by 1 ½ feet wide. Stuth carried the bassinet at her waist with her hands at either end of the three-foot long sides.

---

[1] Unless otherwise noted, the facts have been drawn from Hearthstone's Statement of Undisputed Facts (Docket No. 35), the plaintiff's responses thereto (Docket No. 38, Ex. 1), Brixmor's responses thereto (Docket No. 41, Ex. 2), and the exhibits attached to submissions filed by the parties (Docket No. 37; Docket No. 38, Exs. 5-10; Docket No. 45, Exs. 1-3).

On her way to the car, the plaintiff felt her right toe catch in something and fell. It is undisputed that the plaintiff's toe caught on a crack, also described as a "seam separation," in the parking lot's pavement that was running parallel with the direction that the plaintiff was walking. A seam separation[2] occurs when two runs of asphalt come together and, over a period of several years, the asphalt expands or contracts. The crack that Stuth allegedly caught her toe on was an inch to three inches wide and deep. The plaintiff did not see the crack until she fell and turned over. The plaintiff suffered injuries as a result of the fall.

## II.    The Premises and the Sweeping Contract

At the time of Stuth's injury, defendant Brixmor owned the Premises and its employee, Susan Jones, managed it. On or about October 1, 2011, Hearthstone and Brixmor's predecessor in interest[3] entered into a contract for services to be performed at the Premises (the "Sweeping Contract"). Hearthstone is a company that provides maintenance and upkeep services for parking lots in Middle Tennessee, including asphalt repair and paving. (Docket No. 36.) The Sweeping Contract provides:

> In consideration of the payment of $1375.00 per month the undersigned Hearthstone Property Services, hereby contracts to perform services as set forth herein:
>
> 1. Power sweep and/or vacuum all parking areas . . . seven (7) days per week . . .
>
> 2. Empty all sidewalk trash receptacles and replace plastic liners. Wipe all receptacles clean one (1) day per week . . .
>
> 3. Thoroughly clean around all dumpster areas seven (7) days per week . . .

---

[2] For purposes of this Memorandum, the court will use the terms "crack" and "seam separation" interchangeably, as the parties do.

[3] The Sweeping Contract identifies Brixmor's predecessor in interest as "Centro Properties Group and Watson Glen, Franklin, TN."

4. Pick up litter from planters, islands, and landscaped areas . . .

   . . . .

   8. *Immediately report any maintenance problems such as potholes, cracked asphalt or concrete*, loose wood or trim, water leaks in canopy, etc. to Centro Properties Group along with cost or repair if within contractors [*sic*] ability to repair. *No repairs shall be performed without prior written approval of Centro Properties Group.* Immediately forward receipts, work orders, etc. evidencing such repair.

(Docket No. 38, Ex. 10 (emphases added).) The contract further provides that Hearthstone agrees to indemnify and hold harmless the property owner from all damages or claims by any person arising out of services performed by Hearthstone, "except for the sole negligence of [the property owner]." (*Id.*)

### III.  Services Performed under the Sweeping Contract

In August and September 2011, Susan Jones, an employee of Brixmor and the manager of the Premises, visited the Premises and made inspections of the exterior, including the parking lot. It is undisputed that Brixmor was aware of cracks in asphalt in the parking lot as early as Jones' inspection of the Premises in August 2011. At some point in 2011, Brixmor requested a bid from Hearthstone for seal coating and stripping. Seal coating involves covering the parking lot with a cold tar sealer. (Docket No. 36 ¶ 15.) Scott Graby, an employee of Hearthstone, testified at his deposition that the purpose of seal coating is to keep water from penetrating the asphalt. (Docket No. 38, Ex. 5 at 16-17.) In October and November 2011, Hearthstone performed a seal coating and stripping job on the Premises.

It is undisputed that the crack that allegedly caused Stuth to fall was present before October 2011. Moreover, it appears undisputed that the seal coating job performed by Hearthstone was not intended to repair any cracks in the asphalt at the Premises, nor would the

4

seal coating job achieve that result.[4]  Graby testified that, in the past, his company has repaired seam separations at the request of a property owner, but only when property owners specifically request such repair.  (*Id.* at 28.)  It is further undisputed that the seam was not repaired by the seal coating job performed by Hearthstone.  Nevertheless, all parties agree that the seal coating job in October and November 2011 was performed to Brixmor's satisfaction.

Following the seal coating job performed by Hearthstone, Jones visited the Premises in early December 2011 and performed an inspection of the exterior.  She "looked for obvious potholes," examined "landscaping," inspected "any trash in the rear that needed to be disposed of," and visited with some tenants of the property.  During that visit, she observed various cracks throughout the parking lot.  Nevertheless, it is undisputed that Brixmor did not request that Hearthstone repair any cracks or seams in the area where Stuth fell and that Brixmor did not budget for crack repair to be done at the Premises in 2011.  Jones testified at her deposition that, based on her observations of the parking lot, she did not consider the condition of the parking lot to be an immediate significant hazard.  (Docket No. 37, Ex. 2 at 36.)  Finally, it is undisputed that Hearthstone did not report the crack that allegedly caused the plaintiff's fall as a maintenance problem to Brixmor at any point prior to the plaintiff's injury.

## IV.    The Action

The plaintiff filed a Complaint against Brixmor on December 21, 2012, alleging that the negligence of Brixmor or its agents caused her injury.  (Docket No. 1.)  On March 29, 2013, Brixmor answered the Complaint.  (Docket No. 7.)  On June 7, 2013, with the court's permission, Brixmor amended its Answer to plead the comparative fault of defendant

---

[4] Graby further testified that, in order to repair a seam separation, additional work like infrared heat or cut patch repair would have to be performed.  (Docket No. 36 ¶ 15.)

Hearthstone. (Docket No. 16.) Thereafter, with the court's permission, the plaintiff filed an Amended Complaint, adding Hearthstone as a defendant. (Docket No. 19.)

On August 15, 2013, Hearthstone answered the Amended Complaint. (Docket No. 23.) On August 30, 2013, Brixmor filed its Answer to the Amended Complaint and included a cross-claim against Hearthstone. (Docket No. 24.) Specifically, Brixmor alleged that Hearthstone breached its obligations under the Sweeping Contract by failing to report the seam separation to Brixmor and by failing to indemnify and hold harmless Brixmor in accordance with its promises under the agreement. (*Id.*) The pending Motion for Summary Judgment was filed on April 1, 2014. (Docket No. 33.)

## ANALYSIS

### I. Rule 56 Standard

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. 242, at 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. The Plaintiff's Premises Liability Claim

### A. Premises Liability under Tennessee Law

Stuth's claim against Hearthstone is a traditional premises liability claim, which is analyzed under common law principles of negligence. *Concklin v. Holland*, 138 S.W.3d 215, 220 (Tenn. Ct. App. 2003). In Tennessee, to establish a *prima facie* case for premises liability based upon negligence, a plaintiff must prove (1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant that was below the standard of care, amounting to a breach of a duty; (3) an injury or loss; (4) causation in fact; and (5) proximate causation. *Williams v. Linkscorp Tenn. Six, LLC*, 212 S.W.3d 293, 296 (Tenn. Ct. App. 2006) (citing *Coin v. City of Savannah*, 966 S.W.2d 34, 39 (Tenn. 1998)). The burden is on Stuth to prove by a preponderance of the evidence the existence of all five elements, including a duty owed by a defendant to her and a breach of that duty. If a plaintiff fails to demonstrate any of the necessary elements of a premises liability claim, summary judgment is appropriate for the defendant as to her claim. (*See id.*)

### B. Application

Hearthstone has moved for summary judgment as to Stuth's claims against it on the grounds that (1) it did not owe a duty to Stuth to provide a parking lot free of cracks; (2) Hearthstone does not owe a duty to Stuth under the Sweeping Contract; (3) if Hearthstone did

owe a duty to Stuth, it did not apply here because the seam separation that allegedly caused Stuth's injury was not a dangerous or defective condition; and (4) if it did owe a duty to Stuth, Hearthstone's breach of its duty was not a cause in fact or proximate cause of Stuth's injury. Hearthstone has also moved for summary judgment as to Brixmor's cross-claim against it on the ground that the Sweeping Contract does not obligate Hearthstone to indemnify Brixmor as to Stuth's claims.

1. Duty

    i. *Duty, Generally*

The initial inquiry relevant to the pending motion is: did Hearthstone owe a duty to Stuth? "Legal duty has been defined as the legal obligation owed by a defendant to a plaintiff to conform to a reasonable person standard of care for the protection against unreasonable risks of harm." *Piana v. Old Town of Jackson*, 316 S.W.3d 622, 626 (Tenn. Ct. App. 2009). "A risk is unreasonable and gives rise to a duty to act with due care if the foreseeable probability and gravity of harm posed by the defendant's conduct outweigh the burden upon the defendant to engage in alternative conduct that would have prevented the harm." *Id.* (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). The Tennessee Supreme Court has instructed that, when determining whether a duty is owed in a specific case, courts should apply a "balancing approach, based upon principles of fairness, to identify whether the risk to the plaintiff was unreasonable." *Piana*, 316 S.W.3d at 626. "When balancing the relevant factors, the foreseeability prong is paramount because foreseeability is the test of negligence." *Id.* (citing *Hale v. Ostrow*, 166 S.W.3d 713, 716-17 (Tenn. 2005)).

The existence of a duty is a question of law to be determined by the court. *Hale*, 166 S.W.3d at 716. However, in some circumstances, "the nature of the duty a defendant may owe a

plaintiff is dependent upon the resolution of certain factual issues." *Burks v. Kroger Co.*, No. M2008-02664-COA-R3-CV, 2009 WL 4059145, at *5 (Tenn. Ct. App. Nov. 23, 2009).

Here, the plaintiff alleges in her Amended Complaint that Hearthstone "owed a common law duty to maintain a safe environment for persons they invite onto the property." The plaintiff appears to argue that, as an entity contracted to maintain specific parts of the Premises pursuant to the Sweeping Contract, Hearthstone owed her two duties: first, a duty to safely maintain the Premises as an "operator or agent for care" of the parking lot; and second, a duty under the Sweeping Contract to report to Brixmor potential hazards in the parking lot, including cracks in the asphalt.

ii.   *Duty Arising as Operator or Agent for Care of the Premises*

In its pending motion, Hearthstone vigorously argues that, as a matter of law, it does not owe a common law duty to Stuth because it was not a "person in control" of the Premises. Instead, Hearthstone argues, its role was limited to its engagement by Brixmor for routine sweeping, trash service, and a one-time seal coating job. The court agrees.

Under Tennessee law, it is well settled that, in regard to a defendant's[5] premises liability, "the law places the duty upon the person *in control* of the premises to exercise reasonable and ordinary care under the circumstances not to cause injury to an invitee." *Concklin*, 138 S.W.3d at, 220 (emphasis added). The plaintiff relies upon *Blair v. West Town Mall*, 130 S.W.3d 761 (Tenn. 2004) for the proposition that Hearthstone had a duty to Stuth "as an operator or agent for the care of the parking lot owned by" Brixmor. The plaintiff's reliance on *Blair* is misplaced.

---

[5] The court notes that many traditional premises liability cases, including some cited by the parties here, analyze a property owner's duty of care to its guests. Here, Hearthstone is not an owner and, therefore, those cases are distinguishable.

9

*Blair*, as Hearthstone points out, does not support a finding that a maintenance company that contracted with a property owner to perform certain services and to report hazards on the property thereby *possessed control* over the property. On the contrary, *Blair* analyzed the element of duty as it applied to a premises liability suit filed against an *owner* of the premises—not a third-party contractually obligated to maintain the property. *Blair* makes no mention of the liability of third parties, such as Hearthstone.

The plaintiff similarly misstates the holding of *Concklin v. Holland*. In *Concklin*, parents of a minor filed premises liability claims based on negligence against co-owners of a property after their teenage daughter became sick and died after visiting the property and using alcohol and illicit drugs. 138 S.W.3d at 220. One co-owner, Will Holland, occupied the home and was present at the time of the plaintiffs' daughter's death. The other co-owner, Lewis Holland, did not occupy the home, but was a joint owner of the property. In affirming the dismissal of the plaintiffs' premises liability claim filed against Lewis Holland, the Tennessee Supreme Court concluded that the plaintiffs had failed to plead that Lewis was "in control" of the property. *Concklin*, 138 S.W.3d at 220-21; *see Johnson v. EMPE, Inc.*, 837 S.W.2d 62, 63-66 (Tenn. Ct. App. 1992) (concluding that, where plaintiff's injury occurred at site owned by city being excavated by construction company, the city did not control the construction site and the contractor, not the city, owed a duty to the employee.).

Here, the plaintiffs have failed to submit any evidence that demonstrates that Hearthstone was "in control" of the Premises. On the contrary, the only piece of evidence setting forth duties on the part of Hearthstone—the Sweeping Contract—is limited to a narrow set of responsibilities and, importantly, forbids Hearthstone from making repairs to the Premises without the written

10

consent of the property owner (Brixmor). (Docket No. 38, Ex. 10.) Consequently, the court concludes that, as a matter of law, Hearthstone did not owe a common law duty to Stuth.

Finally, the fact that Brixmor, as the owner "in control" of the Premises, owed a duty of due care to visitors to the property does not, without more, impose a duty on Hearthstone to Brixmor's visitors. Moreover, the undisputed fact that Hearthstone had actual or constructive knowledge of cracks in the parking lot—even the specific crack that allegedly caused the plaintiff's injury—does not impose a duty on Hearthstone to Stuth. However, Hearthstone, by agreeing to render certain services at the Premises, may have assumed a duty that Brixmor owed to its guests, including Stuth.

        iii. *Assumption of Duty Arising from the Sweeping Contract*

The plaintiff contends that, by contracting with Brixmor to "immediately report any maintenance problems, including . . . cracked asphalt," Hearthstone assumed a duty of inspection and reporting that extended to the public. Brixmor agrees with the plaintiff's position, arguing that "Hearthstone assumed a contractual duty to function as the 'eyes and ears' of Brixmor with regard to the condition of the parking lot," and, accordingly, Hearthstone's contractual obligation gave rise to a duty to the public. This duty is stated in the Restatement (Second) of Torts Section 324A. The relevant provision states:

> One who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person . . . , is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) His failure to exercise reasonable care increases the risk of such harm, or
>
> (b) He has undertaken to perform a duty owed by the other to the third person, or
>
> (c) The harm is suffered because of reliance of the other or the third person upon the undertaking.

11

Restatement (Second) of Torts § 324A (1965); *see also Burks*, 2009 WL 4059145, at *6.

The court notes that, although the Sweeping Contract only gives Hearthstone the conditional right to make repairs to the Premises upon written consent of Brixmor, the terms of the Sweeping Contract are unambiguous as to Hearthstone's ongoing duty to report.[6] Moreover, it is undisputed that the agreement creates a duty on the part of Hearthstone to "immediately report maintenance problems" to Brixmor, including potholes, cracked asphalt, and other potential hazards. Simply, it is reasonably foreseeable that visitors to the Premises may have been exposed to injury if Hearthstone negligently performed its duty or failed to perform its duty to report. Consequently, the court concludes that Hearthstone assumed a duty to inspect the property and report maintenance problems for the benefit of visitors to the Premises, including the plaintiff.

        iv.    *Parameters of Hearthstone's Duty to Report*

As previously noted, whether a defendant assumed a duty of care to a plaintiff is a question of law for the court to decide; however, the determination of whether a defendant may

---

[6] It is instructive to compare the Sweeping Contract to contracts analyzed in other cases where courts have assessed a defendant's contractual obligation to maintain, repair, or generally inspect a property for safety. For instance, in *Piana v. Old Town of Jackson*, the Tennessee Court of Appeals rejected a plaintiff's argument that, because a defendant had "occasionally performed maintenance" on a property and "could have inspected or repaired" the path where her husband suffered injury, the defendant had a duty to safely maintain the premises. 316 S.W.3d at 626-28. On the contrary, because the maintenance agreement that set forth obligations on the part of the moving defendant had been executed prior to the path being built, the court held that the parties could not possibly have contemplated the maintenance of the path and, accordingly, the defendant could not be found to have a duty to maintain the path under the contract. *Id.* Likewise, in *Thompson v. Ruby Tuesday, Inc.*, the Tennessee Court of Appeals concluded that a lease agreement that granted a tenant the right to make repairs after giving notice to the landlord, but did not obligate the tenant to make repairs, did not give rise to a duty on the part of the tenant to maintain common areas of a parking lot on the property where the plaintiff tripped and fell. No. 2004-01869-COA-R3-CV, 2006 WL 468724, at *6 (Tenn. Ct. App. Feb. 27, 2006).

owe a duty to a plaintiff in a particular case is often dependent upon the resolution of disputed facts. *See Burks*, 2009 WL 4059145, at *6. Here, the record reflects disputes of material fact as to the extent of Hearthstone's duty to report—specifically, whether the seam separation that allegedly caused Stuth's fall qualifies as a maintenance problem under the Sweeping Contract. Both defendants, Brixmor and Hearthstone, argue that Hearthstone's duty to report was limited to "immediate significant hazards" identified (subjectively) by Hearthstone's employees.[7] The defendants further contend that the crack that allegedly caused Stuth's injury does not reach that high bar of perilousness.[8] Moreover, Hearthstone and Brixmor argue that, although they were aware of the seam separation, cracks in asphalt are commonly found in Middle Tennessee. The parameters of Hearthstone's (and Brixmor's) duties to Stuth, they contend, do not extend to

---

[7] The court recognizes that Brixmor and Hearthstone, the parties to the Sweeping Contract, are taking positions contrary to the agreement's plain language. However, the parties' retroactive reimagining of the language of the contract does not alter the face of the document. Notwithstanding the defendants' conception of the purpose of the Sweeping Contract or the parties' intent in forming the agreement, the Sweeping Contract was clearly formed for the benefit of the defendants as well as visitors to the Premises. With its beneficiaries in mind, the court concludes that there is a public policy reason for reading the Sweeping Contract by its plain, unambiguous terms.

[8] Susan Jones, the property manager of the Premises, testified at her deposition that she was aware that there were cracks throughout the Premises, even before Hearthstone began to render services for Brixmor. (Docket No. 37, Ex. 2 at 40.) Jones further testified that it was her belief that the crack that allegedly caused the plaintiff's injury was not so significant that it would require Hearthstone to report its appearance to her. (*Id.*) Moreover, Steve Leuze, an employee of Hearthstone who performed sweeping services at the Premises, testified that he did not consider the seam separation that allegedly caused the plaintiff's injury to be a hazard that he needed to report to the property owner. (Docket No. 38, Ex. 7 at 15.) Finally, Graby also submitted in an affidavit that he did not consider the seam separation to be a maintenance problem. (Docket No. 36.)

minor aberrations in the parking lot.[9] (Docket No. 34 (citing *Green v. Roberts*, 398 S.W.3d 172, 174 (Tenn. 2012)).)

Regardless of the defendants' positions, however, the Sweeping Contract's plain terms do not limit Hearthstone's duty to report to severe or "immediate significant" maintenance problems. Moreover, the plaintiff's testimony regarding the crack, coupled with two photographs of the crack attached to the plaintiff's Amended Complaint, indicate that a reasonable factfinder may conclude that the seam separation rose above the level of a "minor aberration" in the premises to an "immediate significant" or dangerous and defective condition. Accordingly, the court concludes that genuine issues of material fact exist relevant to whether Hearthstone assumed a duty owed to Stuth related to her injury. Consequently, summary judgment on the issue of duty is not appropriate for Hearthstone.

2. Causation

Hearthstone contends that it is entitled to summary judgment as to the plaintiff's premises liability claim because the plaintiff has failed to demonstrate that a material issue of fact exists as to causation. Under Tennessee law, a negligence claim requires proof of two types of causation:

---

[9] Both Brixmor and Hearthstone spend significant time in their briefs arguing that the seam separation that allegedly caused Stuth's fall was not a "dangerous or defective condition." Having concluded that Hearthstone assumed a duty to Stuth under the Sweeping Contract (and not as an owner or operator of the Premises), the court concludes that the issue of whether or not the crack fell within Hearthstone's duty to report is a question of fact to be determined by a jury. For its part, Brixmor's contention that the crack does not constitute a "dangerous or defective" condition foreshadows its position that it did not owe Stuth a duty as to the crack in the parking lot. Under Tennessee law, the factual determination of whether a condition reaches the level of "dangerous or defective" substantially affects the liability of a property owner such as Brixmor. *See Green*, 398 S.W.3d 172, 177 ("The duty [of a property owner] includes the obligation of the owner to maintain the premises in a reasonably safe condition, and to remove or warn against latent or hidden dangerous conditions of which the owner is aware or should be aware through the exercise of reasonable diligence.").

causation in fact and proximate cause. "Causation [in fact] and proximate cause are distinct elements of negligence, and both must be proven by the plaintiff by a preponderance of the evidence." *Hale*, 166 S.W.3d at 719. "Cause in fact and proximate cause are ordinarily jury questions, unless the uncontroverted facts and inferences to be drawn from them make it so clear that all reasonable persons must agree on the proper outcome." *Id.*

      i. *Causation in Fact*

A defendant's conduct is the cause in fact of a plaintiff's injury if, as a factual matter, it directly contributed to the plaintiff's injury. *Id.* Accordingly, here, the court must determine whether the plaintiff's injury would have happened "but for" the defendant's act or omission. *Id.* If not, then the defendant's conduct is a cause in fact of the plaintiff's injury. "It is not necessary that the defendant's act be the *sole* cause of the plaintiff's injury, only that it be *a* cause." *Id.* (emphases in original).

Viewing the facts in the light most favorable to Stuth, there is a genuine issue of material fact as to whether or not Hearthstone's failure to report the seam separation was a cause in fact of her injury. It is undisputed that Hearthstone did not report the seam separation to Brixmor. It is also undisputed that, although Brixmor was aware of cracks in the parking lot prior to Hearthstone rendering services to the Premises, including a detailed seal coating of the parking lot, Brixmor did not request that Hearthstone repair cracks in the parking lot and did not budget for the repair of cracks to the parking lot, even after Jones inspected the parking lot and observed cracks after the seal coating service and shortly before the plaintiff's injury. Nevertheless, the terms of the Sweeping Contract indicate that Brixmor had enlisted Hearthstone to identify potential hazards to Brixmor for repair. The court concludes that, because it is undisputed that Hearthstone failed to report the potential hazard caused by the seam separation, a reasonable

15

factfinder may conclude that Hearthstone's failure to report the seam separation was a cause in fact of Stuth's injury. Accordingly, summary judgment is not appropriate for Hearthstone as to causation in fact.

      ii. *Proximate Causation*

As opposed to causation in fact, "[p]roximate cause puts a limit on the causal chain, such that, even though the plaintiff's injury would not have happened but for the defendants' breach, defendants will not be held liable for injuries that were not substantially caused by their conduct or were not reasonably foreseeable results of their conduct." *Hale*, 166 S.W.3d at 719. Proximate cause is analyzed using a three part test:

(1) The tortfeasor's conduct must have been a "substantial factor" in bringing about the harm being complained of; and

(2) There is no rule or policy that should relieve the wrongdoer from liability because of the manner in which the negligence has resulted in the harm; and

(3) The harm giving rise to the action could have reasonably been foreseen or anticipated by a person of ordinary intelligence and prudence.

*Id.* (internal citations omitted).

Hearthstone argues that, even if it had reported the seam separation to Brixmor, the undisputed facts show that Brixmor would not have repaired (or asked Hearthstone to repair) the seam separation. Therefore, according to Hearthstone, its alleged breach of its duty to report was not a "substantial factor" in the plaintiff's injury. In support of this position, Hearthstone relies on four undisputed facts: (1) Brixmor knew of cracks in asphalt on the Premises, (2) Brixmor did not consider this particular seam separation worthy of notification, (3) Hearthstone did not have a duty to repair defects in the parking lot, and (4) Brixmor made a conscious decision not to

16

repair this seam separation (and other seam separations) when it made other improvements to the parking lot in October 2011.

These facts certainly weigh heavily in Hearthstone's favor on the issue of proximate causation.[10] However, there is no direct evidence in the record as to what Brixmor would have done if Hearthstone *had* reported the crack as a maintenance problem. Without such evidence, the court concludes that the facts and inferences drawn from the record do not "permit reasonable persons to reach only one conclusion." *Burks*, 2009 WL 4059145. Consequently, there is a question of material fact appropriate for a jury's determination regarding whether Hearthstone's alleged breach was a "substantial factor" in the plaintiff's injury. Accordingly, summary judgment is inappropriate for Hearthstone as to the plaintiff's premises liability claim.

## III.     Brixmor's Cross-Claim

---

[10] The court notes that Hearthstone relies in error on a causation analysis taken from *Evans v. Arise Inc.*, No. 08-cv-1177, 2008 WL 5429835 (W.D. Tenn. Dec. 30, 2008). In *Evans*, the district court assessed the liability of a boiler inspection company that had contracted to provide inspection services for an automotive manufacturing plant. After an employee of the plant suffered severe injuries, the employee filed negligence claims against several defendants, including the boiler inspection company. At the summary judgment stage, the district court analyzed the claim under Section 324A of the Restatement (Second) of Torts and concluded that, because inspection is a passive act, the facts did not show that a negligent inspection increased the risk of the boiler exploding. *Id.* at *4 ("The Tennessee Supreme Court has not specifically addressed the requirements for a claim of negligent inspection. Federal courts analyzing allegations of negligent inspection under Tennessee law, however, have previously applied Section 324A of the Restatement (Second) of Torts.") Under the relevant section of the Restatement, the court's causation analysis was limited to whether the defendant's failure to exercise reasonable care in its boiler inspection "increase[d] the risk of" harm to the plaintiff. The court notes the parallels of *Evans* to the circumstances of the plaintiff's claim. However, unlike *Evans*, the plaintiff here has pleaded a premises liability claim based on negligence against Hearthstone. Accordingly, the proper causation analysis requires a finding that no issues of material fact exist as to causation in fact and proximate cause.

17

Hearthstone has also moved for summary judgment as to Brixmor's cross-claim for breach of contract and indemnification. The Sweeping Contract provides:

> The undersigned (Hearthstone) agrees to indemnify and hold harmless Centro Properties Group and Watson Glen, Franklin, TN to the fullest extent provided by law, from and against all damages, claims, suits or demands by any person or persons, arising out of, or resulting from services performed by the undersigned, its agents, employees, servants . . . in connection with this agreement at Watson Glen, Franklin, TN *except for the sole negligence of Centro Properties Group.*

(Docket No. 38, Ex. 10 (emphasis added).) Hearthstone argues that, if the court grants summary judgment to Hearthstone as to the plaintiff's claim, summary judgment is also appropriate as to Brixmor's cross-claim because the injury of the plaintiff would have resulted from the sole negligence of Brixmor. For substantially the same reasons discussed in the section addressing the merits of the plaintiff's claim against Hearthstone, the court concludes that a question of fact exists for trial as to Hearthstone's negligence. Accordingly, summary judgment is not appropriate for Hearthstone as to Brixmor's cross-claim for indemnification.

## **CONCLUSION**

For the reasons stated herein, Hearthstone's Motion for Summary Judgment and Motion for Judgment as a Matter of Law will be denied. An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge